Charles Elmer HANSEN, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C7–84–1901.

Court of Appeals of Minnesota.

April 9, 1985.

Skipper J. Pearson, St. Cloud, for respondent.

Hubert H. Humphrey, III, Atty. Gen., of Minn., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal by the Commissioner of Public Safety from an order rescinding the revocation of Charles Hansen's driving privileges. Hansen's driving privileges had been revoked following test results showing that he had a .16 blood alcohol concentration. We find the police officer properly invoked the implied consent law and reverse and remand.

## FACTS

On August 3, 1984 at about 7:45 p.m., a Cold Spring police officer was dispatched

to a location in Cold Spring where it was reported someone was speeding and driving erratically, including driving over a lawn causing deep ruts across the lawn. The officer was given a description of the vehicle by Bob Christen who observed the incident. Christen and the officer then drove off to the location where Christen had observed the vehicle drive into a driveway and park. When they got there the vehicle was not in the driveway. Next to the driveway was Sportsmen's Park, a privately-owned park just outside the city limits of Cold Spring. As the officer pulled into the park, Christen spotted the vehicle. The officer asked a group of people whose car it was and respondent Hansen stepped forward. Christen identified Hansen as the driver of the car which had driven over the lawn. The officer then asked Hansen if he would like to come back to town to see something, and Hansen willingly went with the officer. At this time the officer noticed Hansen was not very steady on his feet.

While the officer was driving Hansen and Christen back to the lawn, Hansen stated "I know I did it. I'll pay for it. I'll pay to get the lawn fixed up. Don't worry about it. I'll pay for it."

At the damaged lawn, the officer smelled a strong odor of alcohol on Hansen's breath and asked him to perform field sobriety tests. Hansen swayed during a balance test, was unable to touch the tip of his nose on a finger to nose test, and had difficulty counting backwards from 35 to 25. The officer believed Hansen was intoxicated and arrested him for D.W.I. Hansen admitted drinking seven to eight beers that evening, the last one being about three to four minutes before the officer got the call on the erratic driving.

At the implied consent hearing the trial court rescinded the Commissioner of Public Safety's order revoking Hansen's driving privileges on Hansen's motion at the close of the Commissioner's case. The trial court stated that the officer used a ruse or pretext to get Hansen back into the officer's jurisdiction in Cold Spring. The trial court also found a problem with the lack of a time frame established for the drinking or the act.

## ISSUE

Did the trial court err in determining that the officer improperly invoked the implied consent law?

## ANALYSIS

Under Minn.Stat. § 169.123, subd. 2 (Supp.1983) an officer may request an implied consent test in any of four situations: 1) a D.W.I. arrest, 2) an accident, 3) a refusal to take a preliminary breath test, and 4) a failed preliminary breath test.

█ 1. This case does not involve a D.W.I. arrest *outside* the officer's jurisdiction. The trial court implicitly found the arrest occurred in Cold Spring after the officer used a "ruse" to get Hansen back into Cold Spring. As such, the trial court's reliance on *Bounds v. Commissioner of Public Safety*, 353 N.W.2d 659 (Minn.Ct. App.1984) (*Bounds I*) is misplaced. The offense here occurred within the jurisdiction of Cold Spring, Hansen was given field sobriety tests within Cold Spring and was arrested in Cold Spring by a Cold Spring officer.

Even if the arrest occurred at the scene of the Sportsmen's Park, outside the Cold Spring jurisdiction, it is unlikely that the arrest could be faulted in light of Minn. Stat. § 629.40, subd. 1 (1982); *Windschitl v. Commissioner of Public Safety*, 355 N.W.2d 146 (Minn.1984); and *Bounds v. Commissioner of Public Safety*, 361 N.W.2d 145 (Minn.Ct.App.1985) (*Bounds II*).

█ 2. The trial court found the officer used a "ruse" to get Hansen back into the jurisdiction of Cold Spring. This is not a valid reason for rescinding the Commissioner's order. The officer did not lie to Hansen or coerce him. We are unaware of any authority which states an officer may not ask a suspect to return to the jurisdiction where he may have committed an offense. Here, it is alleged Hansen was driv-

ing while intoxicated on the streets and over someone's yard and then left the jurisdiction of Cold Spring. We cannot fault the officer's conduct. It bears repeating that D.W.I. laws are to be broadly construed in the public's favor. *State, Dept. of Public Safety v. Juncewski,* 308 N.W.2d 316, 320 (Minn.1981).

■ 3. The officer was entitled to invoke the implied consent law anyway since Hansen was involved in an accident resulting in property damage when he drove off the road damaging the lawn. Minn.Stat. § 169.123, subd. 2 (Supp.1983).

■ 4. The trial court's reliance on a "time frame" problem is puzzling. This ground was not specified in Hansen's petition for judicial review as required by Minn.Stat. § 169.123, subd. 5(c) (Supp. 1983). *Schafer v. Commissioner of Public Safety,* 348 N.W.2d 365 (Minn.Ct.App. 1984). Further, the sole witness at the implied consent hearing was the officer who testified that Hansen had told the officer he drank seven or eight beers, the last one a few minutes before the reporting of erratic driving at about 7:45 p.m. It is unclear what "problem" the trial court had with this uncontroverted testimony. Respondent did not address this issue in his brief.

### DECISION

The Cold Spring police officer properly invoked the implied consent law either on the basis of a valid D.W.I. arrest or on the basis of an accident. As the trial court ruled after the close of the Commissioner's case and before respondent had an opportunity to present evidence in its brief, respondent requested a remand should this court agree with appellant's contentions. We will allow respondent an opportunity to present his witnesses and pursue other issues specified in his petition for an implied consent hearing, and therefore remand the case back to the trial court.

REVERSED AND REMANDED.